UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RYENEIL BOOKER,

      Plaintiff,

   - against -

SOHO STUDIO CORP., d/b/a TILEBAR,

      Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-5426 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

Plaintiff Ryeneil Booker brings this action alleging claims for disability discrimination and failure to accommodate under the American with Disabilities Act, as amended in 2008 ("ADA"); the New York State Humans Rights Law ("NYSHRL"), New York Executive Law §§ 292 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§ 8–107 *et seq.*[1] Before the Court is the motion of Defendant Soho Studio Corporation for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the Court grants that motion, finding that Defendant is entitled to judgment as a matter of law on Plaintiff's ADA claims and declining to exercise supplemental jurisdiction over Plaintiff's state and municipal law claims.

---

[1] The Court notes that Plaintiff included a retaliation claim under the Family Medical Leave Act ("FMLA") in his Complaint, but Plaintiff has withdrawn that claim in his brief responding to Defendant's summary judgment motion. (*See* Defendant's Brief ("Def.'s Br."), Dkt. 31, at 1.)

1

## BACKGROUND

**I.     Facts**[2]

Plaintiff began working for Defendant in October 2014 as a warehouse packer. (Plaintiff's 56.1 Statement ("Pl.'s 56.1"), Dkt. 32, ¶ 2.) Defendant contends that "[t]he job of warehouse packer requires lifting, moving[,] and leveling of heavy loads of tiles throughout the day." (Defendant's Corrected 56.1 Statement ("Def.'s Corr. 56.1"), Dkt. 27-2, ¶ 3.) Plaintiff asserts that, while the position involves heavy lifting, when Plaintiff worked for Defendant, "it also involved packing tiles and cleaning them to make sure that they were not moldy[,] . . . lift[ing] the tiles from a track and plac[ing] them in boxes, which were roughly on the same level[, and] [o]nce the box was packed, . . . put[ting] the box on the track to be sent to the front for shipping." (Pl.'s 56.1, Dkt. 32, ¶ 3 (internal citations to the record omitted).) Plaintiff claims that, as part of his job, he would also "go [to] the front to get shredded cardboard or other materials to protect the tiles in the box . . . [and] occasionally, level stacks of tiles." (*Id.* (internal citations to the record omitted).) Both parties agree that "[i]t was typical for a warehouse packer to be required to lift up to 75 pounds as part of his primary responsibility" and that Plaintiff had "never held any other position at Soho other than warehouse packer." (*Id.* ¶¶ 4–5.)

---

[2] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a party's 56.1 statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document. The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded those statements. *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012).

"On or about December 11, 2015, Plaintiff informed Defendant that he was involved in a car accident and could not come to work due to his injuries," and "[o]n or about December 21, 2015, Plaintiff met with [Defendant's] human resources personnel, and requested medical leave due to his injuries." [3] (*Id.* ¶¶ 6–7.) Defendant granted Plaintiff FMLA leave beginning December 11, 2015, which expired March 4, 2016. (*Id.* ¶¶ 8–10.) At the time that his FMLA leave expired, Plaintiff was only able to lift about 5-15 pounds, and two months after his leave had expired, he could not lift more than 25-30 pounds. (*Id.* ¶¶ 12–13; Plaintiff's Statement of Additional Facts ("Pl.'s Add'l Facts"), Dkt. 32, ¶ 15 ("[Plaintiff] informed [his supervisor] that he was not physically ready to return in March [2016], when his [FMLA] leave ended").) During Plaintiff's FMLA leave, neither he, nor his doctors, knew when he would be able to return to work. (Pl.'s 56.1, Dkt. 32, ¶¶ 15–17.) Plaintiff was only able to return to work on May 17, 2016, over two months after his FMLA leave had expired. (*Id.* ¶¶ 18–19.) Plaintiff informed Defendant as to the progress of his recovery by bringing medical notes about every four weeks to his supervisor and to an HR representative at the company. (Pl.'s Add'l Facts, Dkt. 32, ¶¶ 11–14.)

The parties dispute whether Plaintiff requested additional leave as an accommodation for his disabilities. (*Compare* Pl.'s 56.1, Dkt. 32, ¶ 14, *with* Def.'s Corr. 56.1, Dkt. 27-2, ¶ 14 ("During his FMLA leave, Plaintiff never requested to be assigned to any other position [as] an accommodation for his disability.").) Although Plaintiff's supervisor testified at his deposition

---

[3] Neither party's 56.1 statement includes a description of Plaintiff's injuries or recovery. However, from the briefing, and from all parties' statements on the record at the motion hearing, it seems that Plaintiff's disability is undisputed. The Court notes that the Complaint states that as a result of a December 11, 2015 car accident Plaintiff was "diagnosed with a sprained right shoulder, a continuing (not temporary) condition which would require surgery. [This injury] substantially limits one or more of [Plaintiff]'s major life activities, including, but not limited to, lifting. In addition, [Plaintiff]'s sprained right shoulder also substantially limits the operation of, at a minimum, the major bodily function of musculoskeletal functioning." (Complaint ("Compl."), Dkt. 1, ¶¶ 13–14.)

that Plaintiff did request "additional leave beyond his FMLA leave" (Pl.'s Add'l Facts, Dkt. 32, ¶¶ 15–17), Defendants contend that this request was not one for an accommodation as defined under the ADA (*id.* (Plaintiff's supervisor testifying that, "despite being [Plaintiff]'s supervisor, he knew little about [Plaintiff's] leave, other than when it started and the fact that [Plaintiff] wanted to return to work")). Although the parties disagree about whether Plaintiff sought reassignment to a different position while on FMLA leave, they do agree that "Plaintiff was not qualified for any back-office positions as he did not have [the] requisite qualifications. Plaintiff's last grade of schooling was twelfth grade and he did not graduate from high school." (Pl.'s 56.1, Dkt. 32, ¶ 21.) Plaintiff asserts that he "had worked in the sample room, for a few hours, before his car accident," and that this was work he was physically able to do by March 2016. (Pl.'s Add'l Facts, Dkt. 32, ¶¶ 24–26.) That work was also indirectly supervised by Plaintiff's then-supervisor. (*Id.* ¶ 27.) According to Plaintiff's supervisor, "there were some 'light-duty tasks in the warehouse' and that, within the company, there were 'things that maybe had less heavy lifting in them.'" (*Id.* ¶ 31.) Plaintiff's supervisor did not discuss with him what his physical capabilities were following his FMLA leave. (*Id.* ¶ 32.) There is no dispute that on May 17, 2016, when Plaintiff "was deemed to have resigned his position[,] . . . there were no open warehouse positions," and that Plaintiff would have to re-apply "as a new employee if a new position opened." (Pl.'s 56.1, Dkt. 32, ¶ 20.) On May 17, 2016, Plaintiff unsuccessfully tried to return to work by meeting with a company employee. (Pl.'s Add'l Facts, Dkt. 32, ¶ 18.)

## II.     Procedural History

Plaintiff filed the Complaint in this matter on September 15, 2017. (*See* Compl., Dkt. 1.) Defendant moved for summary judgment on April 17, 2019. (Defendant's Notice of Motion, Dkt.

4

27.) The Court held oral argument on that motion on November 26, 2019. (November 26, 2019 Docket Order.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law" (citation omitted)). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citation omitted). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alteration in original) (internal quotation marks and citation omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks, emphasis, and citation omitted). In determining whether a genuine issue of fact exists, the court

must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

"[T]he Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment [in employment discrimination cases] because the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." *Thompson v. Kaufman's Bakery, Inc.*, No. 03-CV-340 (WMS), 2005 WL 643433, at *3 (W.D.N.Y. Mar. 16, 2005) (internal quotation marks and citation omitted); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (noting that "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions" (internal citation omitted)). Nevertheless, the "summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."); *Marmulszteyn v. Napolitano*, No. 08-CV-4094 (DLI) (LB), 2012 WL 3645776, at *5 (E.D.N.Y. Aug. 22, 2012) ("Although '[t]he Second Circuit has stated that district courts should be particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question,' summary judgment in such a case may still be warranted if the plaintiff relies 'on conclusory allegations of

discrimination and the employer provides a legitimate rationale for its conduct." (quoting *Figueroa v. N.Y. Health & Hosps. Corp.*, 500 F. Supp. 2d 224, 227–28 (S.D.N.Y. 2007))). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted).

## DISCUSSION

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to perform the essential functions of his employment." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (internal quotation marks, citation, and alteration omitted).

> The elements of a claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability. Under the last element, a plaintiff must show that the adverse employment action took place under circumstances giving rise to an inference of discrimination.

*Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234–35 (2d Cir. 2015) (internal quotation marks and citations omitted).

> Claims alleging discrimination under the ADA are subject to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, once a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment

action. But once the employer has set forth its non-discriminatory justification, the
plaintiff must then produce evidence capable of carrying the burden of persuasion
that the employer's action was at least in part motivated by discrimination.

*Davis*, 804 F.3d at 235 (internal citation omitted). "The purpose of this burden-shifting is to discourage dismissal of employment discrimination claims without an employer having to set forth a legitimate reason for the adverse action. Accordingly, a plaintiff's burden to establish an initial prima facie case is, by design, 'minimal and de minimis.'" *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) (internal quotation marks and citation omitted).

## I. ADA Discrimination Claim

### A. Qualified Individual

The Court finds that Plaintiff's disability discrimination claim fails because he is not a "qualified individual" under the ADA. The ADA bars discrimination in employment against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is defined as one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

> In other words, employers may not discriminate against people with disabilities that do not prevent job performance, but when a disability renders a person unable to perform the essential functions of the job, that disability renders him or her unqualified. Accordingly, one of the elements of a claim under the ADA is that an employee was "qualified to perform the essential functions of his job, with or without reasonable accommodation."

*Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). "Although a court will give considerable deference to an employer's determination as to what functions are essential, there are a number of relevant factors that may influence a court's ultimate conclusion as to a position's essential functions." *McMillan*, 711 F.3d at 126 (citing *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)). These factors include the employer's judgment, written job descriptions, the amount of time spent on the

8

job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions. *Stone*, 118 F.3d at 97 (citing 29 C.F.R. § 1630.2(n)(3)).

> Usually, no one listed factor will be dispositive. A court must avoid deciding cases based on unthinking reliance on intuition about the methods by which jobs are to be performed. Instead, a court must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice.

*McMillan*, 711 F.3d at 126 (internal quotation marks and citations omitted). Moreover, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (citation omitted).

Here, it is undisputed that "[i]t was typical for a warehouse packer to be required to lift up to 75 pounds as part of his primary responsibility" (Pl.'s 56.1, Dkt. 32, ¶ 4), which the Court finds was an essential function of Plaintiff's job, *accord Shannon*, 332 F.3d at 100. It is also undisputed that when his FMLA leave expired, Plaintiff was only able to lift about 5-15 pounds, and that two months after his leave expired, he still could not lift more than 25-30 pounds. (Pl.'s 56.1, Dkt. 32, ¶¶ 12–13.) Furthermore, as discussed *infra*, there is nothing in the record suggesting an accommodation that would have enabled Plaintiff to perform this primary responsibility of his job as a warehouse packer.

Accordingly, the Court finds that, because it is undisputed that, at the point Plaintiff was terminated, he was unable to perform an essential function of his job as a warehouse packer, with or without a reasonable accommodation (*id.*), he was not a "qualified individual" under the ADA.

### B. Plaintiff's Proposed Accommodations Are Not Viable Under the ADA.

Plaintiff's claims under the ADA also fail because his proposed accommodations—an indefinite leave or a modified full-time reassignment to the Sample Room—are not viable under the ADA. A "[r]easonable accommodation may include: (1) [m]aking facilities used by employees readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions." 45 C.F.R. § 84.12(b).

#### 1. Indefinite Leave

While temporary leave, for a specified period of time, with clear prospects for recovery, could be a reasonable accommodation,[4] *see Graves v. Finch Pruyn & Co.*, No. 03-CV-266 (GLS) (RFT), 2009 WL 819380, *4–5 (N.D.N.Y. Mar. 27, 2009), *aff'd*, 353 F. App'x 558 (2d Cir. 2009) (summary order), an indefinite leave of absence is not, *Stamey v. NYP Holdings, Inc.*, 358 F. Supp. 2d 317, 324 (S.D.N.Y. 2005) ("The ADA does not require an employer to grant an employee an indefinite leave of absence."); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover . . . ."); *Hall v. Verizon N.Y., Inc.*, No. 13-CV-5518 (NRB), 2017 WL 3605503, at *5–6 (S.D.N.Y. July 26, 2017) (finding that a leave was not a reasonable accommodation for an injured employee when the employer repeatedly asked for documentation that the employee would resume

---

[4] The FMLA allows eligible employees to take up to twelve weeks per year of unpaid leave because of a serious health condition that makes the employee unable to work. 29 U.S.C. § 2612(a)(1)(D); *see also Sista*, 445 F.3d at 174. The statute further provides that at the end of an employee's leave, he has the right to return to the position held before taking leave or its equivalent. 29 U.S.C. § 2614(a)(1). There is no dispute that Plaintiff was permitted to utilize the twelve weeks of FMLA leave, and also that he was unable to lift more than 15 pounds at the end of the twelve-week FMLA leave period. (Pl.'s 56.1, Dkt. 32, ¶¶ 12–13.)

an essential function of her job on a date certain).

In support of his contention that he was not seeking an accommodation for an indefinite or unspecified period of time, Plaintiff argues that while

> there was much uncertainty as to when Plaintiff would be able to return to work[,] . . . the record is also clear that, as the months progressed, so did [P]laintiff's strength and physical ability. . . . Thus, it is simply incorrect that Plaintiff was seeking to be accommodated for an indefinite period of time, as he wanted to return to his regular work as soon as he physically could and as soon as was medically cleared.

(Pl.'s Br., Dkt. 31, at 13.) At the same time, during his leave, neither he nor his medical team was able to provide a timeline for his return. (Pl.'s 56.1, Dkt. 32, ¶¶ 15–18.) Thus, the undisputed record demonstrates that there was no specific time frame for Plaintiff being able to resume his duties as warehouse packer, nor was there any guarantee that he would be able to do so at any point in the future. In fact, Defendant did not terminate Plaintiff as soon as his FMLA leave expired, but waited approximately two months before doing so, at which point Plaintiff's ability to lift was still 45 pounds less than what it needed to be. Though Plaintiff was clearly eager to return to work, wanting to do so does not render a return certain nor the date specific.

Accordingly, the Court finds that the accommodation that Plaintiff requested was for an indefinite leave, which is not considered a reasonable accommodation under the ADA.

### 2. Modified Assignment to the Sample Room

Plaintiff also argues that Defendant failed to accommodate him by assigning him to lighter work in the Sample Room. This argument similarly fails.

"[I]t is generally the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *McElwee v. County of Orange*, 700 F.3d 635, 641–42 (2d Cir. 2012). While "reassignment to a vacant position" may qualify as a "reasonable accommodation," 42 U.S.C. § 12111(9), "the burden of establishing that a vacancy exists [is] on the plaintiff-

employee," *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); *see also Lazzari v. N.Y.C. Dep't of Parks & Recreation*, 751 F. App'x 100, 103 (2d Cir. 2018) (summary order) ("To the extent [plaintiff] maintains that he sought reassignment to a lighter duty position . . . his failure to identify an existing vacant position as a suitable replacement defeats his claim." (citation omitted)). "Once the plaintiff has demonstrated that there is a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,' the defendant bears the burden of proving that the requested accommodation is not reasonable." *McElwee*, 700 F.3d at 642 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). Only then does the burden shift to the defendant to prove that "the requested accommodation is not reasonable." *Id.*

Here, there is no evidence that Plaintiff ever asked to be reassigned to lighter work or to work in the Sample Room, or any other reassignment. Nor has Plaintiff demonstrated that there existed a vacant position in the Sample Room or elsewhere that would have been a "suitable replacement" during the relevant period of time. *Lazzari*, 751 F. App'x at 103. Furthermore, even assuming *arguendo*, that a position in the Sample Room was available at the time, Plaintiff cannot demonstrate that he would have been able to perform the essential functions of that job, since it is undisputed that the work in the Sample Room also required significant heavy lifting. *See Nuchman v. City of New York*, 639 F. App'x 48, 49–50 (2d Cir. 2016) (summary order) ("The ADA does not require the employer to provide every accommodation the disabled employee may request, but only reasonable accommodations that would permit the disabled employee to perform the 'essential functions' of the job." (quoting *McMillan*, 711 F.3d at 126–27; *Fink v. N.Y.C. Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)) (internal quotation marks omitted)); *Shannon*, 332 F.3d at 100 ("A reasonable accommodation can never involve the elimination of an essential function of a job." (citation omitted)); *cf. Davis v. N.Y.C. Health & Hosps. Corp.*, 508 F. App'x 26, 29 (2d

Cir. 2013) (summary order) (finding that proposed accommodation that would excuse nurse from essential patient care duties, including "lifting a patient" and "pushing a wheelchair or stretcher," was not reasonable).

For these reasons, the Court finds that Plaintiff's belatedly identified accommodation of reassignment to a significantly modified position in the Sample Room was never requested, and, in any event, was not a viable accommodation under the ADA.

### C. The Interactive Process

Plaintiff also asserts that Defendant failed to engage in the interactive process as required under the ADA. Although Defendant partially disputes that assertion, even if Defendant failed to engage in the interactive process entirely, such failure does not give rise to an ADA discrimination claim in this case. The Second Circuit has made it clear that

> failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible. Therefore, there is no valid independent claim under the ADA for failure to engage in an interactive process. . . . [H]owever, . . . an employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination, and that the employer has refused to make a reasonable accommodation.

*Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (internal quotation marks, alterations, and citations omitted); *see also Stevens*, 851 F.3d at 231 ("Where the employee's disability is known to the employer, the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. Nevertheless, an employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal." (internal quotation marks, citations, and alterations omitted)). As discussed *supra*, there was no accommodation possible at the time of Plaintiff's termination, and thus

Plaintiff cannot state an independent claim based on Defendant's alleged failure to engage in an interactive process. Furthermore, although the Court may consider this alleged failure to engage in an interactive process as evidence of disability discrimination, the Court finds that this fact—which the Court accepts as established for purposes of this Order—does not affect the Court's prior reasoning or conclusion that Plaintiff has not shown a *prima facie* case of disability discrimination under the ADA.

\* \* \*

For all of the above reasons, the Court finds that Plaintiff cannot establish a *prima facie* case of discrimination under the ADA and grants Defendant summary judgment on Plaintiff's ADA disability discrimination claim.

## II.     ADA Failure to Accommodate Claim

The Court also grants Defendant summary judgment on Plaintiff's ADA failure to accommodate claim. To plead a failure to accommodate claim, under the ADA, a plaintiff must allege that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan*, 711 F.3d at 125–26. For the same reasons discussed in the context of Plaintiff's ADA discrimination claim, the Court finds that at the time of his termination, Plaintiff could not have performed the essential functions of his job, with or without a reasonable accommodation, and this claim therefore fails.

## III.    State and Municipal Claims

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his remaining state and municipal claims and dismisses them

without prejudice to renew in state court. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (internal quotation marks and citation omitted)).

## CONCLUSION

For the reasons discussed herein, the Court finds that, with respect to Plaintiff's ADA claims, there is no genuine issue of material fact and no rational jury could find in his favor. Granting summary judgment to Defendant as to these claims is, therefore, proper. *See Gallo*, 22 F.3d at 1224. Moreover, in light of the Court's dismissal of all of Plaintiff's federal claims in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims, which are dismissed without prejudice to renew in state court. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 22, 2020
 Brooklyn, New York